

FILED

2024 May-20  PM 11:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

### EXHIBIT "1"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHELBY COUNTY, ALABAMA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: 2:24-cv-00507-AMM** |
| | ) | |
| **HENRI BEAULIEU,** | ) | |
| | ) | |
| **Defendant.** | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| **HENRI BEAULIEU,** | ) |
| | ) |
| **Counterclaim-Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **SHELBY COUNTY, ALABAMA,** | ) |
| | ) |
| **Counterclaim-Defendant.** | ) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| **HENRI BEAULIEU,** | ) |
| **JOHNIE BEAULIEU,** | ) |
| **individuals,** | ) |
| | ) |
| **Third-Party Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |

**SHELBY COUNTY COMMISS-** )
**ION, the governing body of Shelby** )
**County, Alabama; KEVIN** )
**MORRIS, TOMMY EDWARDS,** )
**JON PARKER, WARD WIL-** )
**LIAMS, ELWYN BEARDEN,** )
**JEFF BRUMLOW, LINDSEY** )
**ALLISON, RICK SHEPHERD,** )
**and ROBBIE HAYES, individually** )
**and in their official capacities as** )
**Shelby County Commissioners;** )
**CHAD SCROGGINS, individually** )
**and in his official capacity as** )
**Shelby County and Airport** )
**Manager; TERRY FRANKLIN,** )
**individually and in his official** )
**capacity as Manager and/or** )
**Supervisor of the Shelby Airport;** )
**J. BENTLEY OWENS and FRANK C.** )
**ELLIS, JR., individually and in their** )
**official capacities as legal counsel for** )
**Shelby County; OVER THE MOUN-** )
**TAIN AVIATION, LLC, a domestic** )
**corporation; SLIPSTREAM** )
**AVIATION, LLC, a domestic** )
**corporation; BARRY K. FRANKS,** )
**an individual;  WATERWINGS** )
**SEAPLANES, LLC, a domestic** )
**corporation; CHARLES WELDEN,** )
**an individual; CARY PATRICK** )
**COOK, an individual; BIRMING-** )
**HAM FLIGHT CENTER, LLC; a** )
**domestic corporation; ROBERT** )
**SCOTT GRANT and DEBORAH** )
**D. GRANT, individuals; KEVIN D.** )
**MCKEE and RHONDA L.** )
**CARTER, individuals; DAVID** )

**B. ETHEREDGE and MICHAEL**    )
**J. METCALF, individuals;**    )
**AMERICAN DRILLING OF**    )
**ALABAMA, INC., a domestic**    )
**corporation; CHARLES EDWARD** )
**POSKEY, an individual; Fictitious**  )
**Defendants, A, B, C, D, and E,**    )
**being those persons, firms,**    )
**corporations, or other legal entities** )
**who acted on behalf of or as agents**  )
**for Shelby County in causing the**    )
**harm alleged herein; and Fictitious**  )
**Defendants, F, G, H, I, and J, being** )
**those plane owners, plane opera-**    )
**tors, pilots, flight schools, flight**    )
**instructors, trainers, and students**    )
**who caused or contributed to the**    )
**harm alleged herein; all of whose**    )
**names will be substituted by**    )
**amendment when they are**    )
**ascertained,**    )
                                          )
     **Third-Party Defendants.**    )

## <u>DEFENDANT'S COUNTERCLAIM</u><br><u>AND THIRD-PARTY COMPLAINT</u>

COMES NOW, the Defendant, Henri Beaulieu ("Henri Beaulieu" or

"Henri"), and, without waiving his pending Motion to Dismiss the Complaint filed

by Plaintiff, Shelby County, Alabama, which has been removed to this Court from

state court, hereby submits his Counterclaim against the Plaintiff pursuant to Rules

13(a) and (b) of the Federal Rules of Civil Procedure, asserting claims arising out

of the same transactions and occurrences that are the subject matter of the Plaintiff's complaint against him. Henri Beaulieu further submits his Third-Party Complaint against various Third-Party Defendants, named and fictitious, pursuant to Rule 14(a) of the Federal Rules of Civil Procedure. Henri Beaulieu also joins his mother, Johnie Beaulieu ("Johnie Beaulieu" or "Johnie"), as a Third-Party Plaintiff under Rules 19(a) and 20(a) of the Federal Rules of Civil Procedure, and Henri joins claims against opposing parties pursuant to Rule 18(a) of the Federal Rules of Civil Procedure. This Court has subject-matter and personal-jurisdiction over these additional claims and parties.

## I. Introduction

On April 2, 2024, the Plaintiff, Shelby County, Alabama ("the County"), filed a lawsuit against Henri Beaulieu, a concerned citizen, in state court. Henri Beaulieu removed the action to this Court on April 22, 2024 (Doc.1). The County's lawsuit seeks to permanently enjoin Henri Beaulieu's First Amendment rights to free speech and to petition the government for redress of grievances, specifically regarding noise from the planes using the Shelby County Airport ("the Airport"), a public airport in Calera, Alabama, owned and operated by the County that is causing him, his family, and the community harm.

The County's lawsuit ignores the underlying noise issues and

mischaracterizes Henri's lawful speech and petitioning to address these issues, as well as his whistleblowing on ethics violations/misconduct, as interference with Airport operations. Despite Henri Beaulieu ceasing all communications in compliance with their cease-and-desist letter, the County sued him twelve days afterward claiming his actions persisted. Additionally, the County asserts baseless tort claims against Henri, alleging interference with business relationships at the Airport. This lawsuit is a blatant attempt to suppress Beaulieu's constitutionally protected rights, silence his speech, and punish him for whistleblowing, without any evidence of damages.

Henri Beaulieu filed a Motion to Dismiss the County's Complaint on May 2, 2024, for failure to state a claim (Doc.2). The Court has ordered the County to respond. Henri Beaulieu argued for dismissal due to substantial constitutional issues, factual distortions, and the retaliatory nature of the Complaint. He believes the County will continue to misrepresent evidence, malign and falsely attribute conduct to him, and engage in untruths and personal attacks to deflect their wrongdoing and suppress his whistleblowing. The County's tactics aim to prejudice the court and protect profit-driven airport businesses over addressing the harm from Airport operations.

Henri Beaulieu's Counterclaim and Third-Party Complaint assert that the

County's lawsuit and actions unduly infringe on his constitutional rights. He brings federal claims under 42 U.S.C. §1983 against the County and others for violating his First Amendment rights to free speech, to petition the government, and his freedom of association. Henri Beaulieu and Johnie Beaulieu also assert §1983 claims for the County's taking of their property without just compensation due to noise from Airport operations, various Fifth and Fourteenth Amendments due process violations in connection with the lawsuit and the noise, and an equal protection claim under the Fourteenth Amendment for favoring a private boat sales business on Airport property instead of using it for public purposes. They also assert a conspiracy claim under §1985 claim for the County's deprivation of their constitutional rights.

Henri Beaulieu further disputes the County's claim that federal law prevents it from addressing the airport noise nuisance. He argues that FAA grant assurances/mandates do not override the County's duty to regulate noise, and that Alabama Code Sections 4-4-1(6) and (7) prohibit the County from ceding control over airport privileges and concessions. If the County accepted the grant assurances/mandates despite these state law restrictions, it may have acted unlawfully. Henri requests that the Court consider these provisions in assessing the validity of the County's federal preemption defense and its authority to

regulate airport noise.

In addition to the substantial federal questions, Henri and Johnie Beaulieu assert various state law claims, including private nuisance, inverse condemnation, conspiracy, breach of fiduciary duties, and abuse of process. They seek restoration of their rights, noise abatement, declaratory and injunctive relief, and damages.

The Court's intervention is necessary to resolve the parties' rights and obligations concerning noise control and other harms arising from the County's operation of the Airport, as well as to address the interplay between federal and state law issues raised by the County in response to Henri Beaulieu's demands for action and accountability. This case represents a critical stand against local government officials' abuse of power and prioritization of the private business interests at the Airport over the well-being of the Beaulieus and the community.

## II. Parties

(*Plaintiffs*)

1.  Counterclaim-Plaintiff/Third-Party Plaintiffs, **Henri Beaulieu and Johnie C. Beaulieu**, are individuals over the age of nineteen (19) years and are bona fide residents of unincorporated Shelby County, Alabama.

(*County Defendants*)

(These Defendants are sometimes collectively referred

to as "the County Defendants")

2.   Counterclaim-Defendant, **Shelby County, Alabama**, is a political subdivision of the state of Alabama, and owns and operates the **Shelby County Airport** (the "Airport"), a small, unregulated public airport located in Calera, Shelby County, Alabama.

3.   Third-Party Defendant, **Shelby County Commission**, is governed by a nine-member body elected by the citizens of Shelby County and is responsible for the control and management of the Airport.

4.   Third-Party Defendants, **Kevin Morris** (District 1), **Tommy Edwards** (District 2), **Jon Parker** (District 3), **Ward Williams** (District 4), **Elwyn Bearden** (District 5), **Jeff Brumlow** (District 6), **Lindsey Allison** (District 7), **Rick Shepherd** (District 8), and **Robbie Hayes** (District 9), are individuals over the age of nineteen (19) years, are believed to be resident citizens of Shelby County, Alabama, and are the nine (9) members of the Shelby County Commission (they are often referred to collectively herein as the "individual Commissioners"). They are sued individually and in their official capacities as Shelby County Commissioners with regard to the issues concerning the Airport.

5.   Third-Party Defendant, **Chad Scroggins**, is an individual over the age of nineteen (19) years, is a resident citizen of Shelby County, Alabama, an

employee of the County, and is sued individually and in his official capacity as County Manager and Manager of the Airport.

6.   Third-Party Defendant, **Terry Franklin**, is an individual over the age of nineteen (19) years, is a resident citizen of Jefferson County, Alabama, an employee of the County, and is sued individually and in his official capacity as Airport Manager and/or Aviation Supervisor of the Airport.

7.   Third-Party Defendant, **J. Bentley Owens**, is an individual over the age of nineteen (19) years and a resident of Shelby County, Alabama, and is sued individually and in his official capacity as legal counsel for Shelby County, Alabama;

8.   Third-Party, Defendant, **Frank C. Ellis, Jr.,** is an individual over the age of nineteen (19) years and a resident of Shelby County, Alabama, and is sued individually and in his official capacity as legal counsel for Shelby County, Alabama.

9.   Fictitious Third-Party Defendants, **A, B, C, D and E**, being those persons, firms, corporations, or other legal entities who acted on behalf of or as agents for Shelby County in causing the harm alleged herein, all of whose names will be substituted by amendment when they are ascertained.

(*Private Defendants*)

(These Defendants are sometimes collectively referred
to as "the Airport User Defendants")

10.   Third-Party Defendant, **Over the Mountain Aviation, LLC,** is a
domestic limited liability company having its principal place of business located in
Shelby County, Alabama.

11.   Third-Party Defendant, **Slipstream Aviation, LLC**, is a domestic
limited liability company having its principal place of business located in Shelby
County, Alabama.

12.   Third-Party Defendant, **Barry K. Franks**, is an individual over the age
of nineteen (19) years, and a resident citizen of Shelby County, Alabama.

13.  Third-Party Defendant, **WaterWings Seaplanes, LLC,** is a domestic
limited liability company doing business in Shelby County, Alabama.

14.  Third-Party Defendant, **Charles Welden**, is an individual over the age
of nineteen (19) years, and a resident citizen of Shelby County, Alabama.

15.  Third-Party Defendant, **Cary Patrick Cook**, is an individual over the
age of nineteen (19) years, and a resident citizen of Shelby County, Alabama.

16.  Third-Party Defendant, **American Drilling of Alabama, Inc.,** is a
domestic corporation having its principal place of business in Shelby County,
Alabama.

17.   Third-Party Defendant, **Charles Edward Poskey**, is an individual over the age of nineteen (19) years, and a resident citizen of Shelby County, Alabama.

18.   Third-Party Defendant, **Birmingham Flight Center, LLC,** is a domestic limited liability company, with its principal place of business in Jefferson County, Alabama, and conducts and avails itself of business in Shelby County, Alabama.

19.   Third-Party Defendants, **Robert S. Grant and Deborah D. Grant,** are individuals over the age of nineteen (19) years, and are resident citizens of Shelby County, Alabama.

20.   Third-Party Defendants, **Kevin McKee and Rhonda L. Carter,** are individuals over the age of nineteen (19) years, and are resident citizens of Shelby County, Alabama.

21.   Third-Party Defendants, **David B. Etheredge and Michael J. Metcalf,** are individuals over the age of nineteen (19) years, and are resident citizens of Shelby County, Alabama.

22.   Fictitious Third-Party Defendants, **F, G, H, I, and J**, being those plane owners, plane operators, pilots, flight schools, flight instructors, trainers, and students who caused or contributed to the harm alleged herein; all of whose names will be substituted by amendment when they are ascertained.

### III. Jurisdiction/Venue

23.   This Counterclaim and Third-Party Complaint arise under the general federal question jurisdiction provisions of 28 U.S.C. §§1331 and 1343, and under the declaratory and further relief provisions under 28 U.S.C. §§2201 and 2202, as each has been amended from time to time to redress and enjoin unconstitutional acts.

24.   Certain federal claims arise under the First, Fifth and Fourteenth Amendments to the Constitution of the United States and its laws, including and under the provisions of 42 U.S.C. §1983, as well as a potential application of the Tenth Amendment to the Constitution of the United States. Counterclaim Plaintiffs/Third-Party Plaintiffs, Henri and Johnie Beaulieu request reasonable attorney's fees for their counsel of record under the provisions of 42 U.S.C. §1988.

25. Supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367 over the attendant state law claims asserted herein which are so related to the federal claims in this action that they form part of the same cause or controversy under Article III of the Constitution of the United States of America.

26.   Venue is proper within the meaning of 28 U.S.C. §1391 (b), (c), and (d) in this Court as all named parties do business or avail themselves of business in Shelby County, Alabama, or reside in Shelby or Jefferson Counties, which lie

within this judicial district. Additionally, all of the events or omissions giving rise to the claims asserted occurred in Shelby County, and the property that is a subject of this action is situated in Shelby County, Alabama.

27.  The jurisdiction of this Court is also invoked pursuant to the laws of the State of Alabama, including, but not limited to, Alabama Code §6-5-120, relating to nuisances, and an  interpretation of Alabama Code § 4-4-1 (6) and (7) as they relate to federal grant assurances/mandates under the Federal Aviation Administration.

28.  Claims for compensatory damages as permitted by law are sought in an amount in excess of the jurisdictional minimum, exclusive of interest and costs, as well as punitive damages as permitted by law.

29.  As per Alabama Code §6-5-20, the Third-Party Complaint is brought following the County Commission's failure to respond to the Third-Party Plaintiffs' Notice of Claim submitted on December 22, 2023. The Commission's inaction within the prescribed 90-day period, without a recorded disallowance or reduction of the claim, constitutes a de facto disallowance, permitting the commencement of this action.

## IV. Non-Joinder

30.  Donna Beaulieu, the undersigned counsel, serves as counsel for her

husband, Henri Beaulieu, and her mother-in-law, Johnie Beaulieu. Counsel and other family members also reside on the Beaulieu property but are not joined as Third-Party Plaintiffs, as they are not necessary or indispensable parties for adjudication, and complete relief can be granted to the current parties without joining Donna Beaulieu and the other family members, and their interests would not be impaired or impeded by their absence, as they are adequately represented by the current Third-Party Plaintiffs.

31.   Additionally, adjudicating this matter between the current Third-Party Plaintiffs and Third-party Defendants would not risk subjecting the Third-Party Defendants to inconsistent obligations, as any final adjudication would also be binding on the other family members.

32.   The Third-Party Plaintiffs reserve the right to join additional plaintiffs or defendants at a later date if deemed necessary for the full resolution of this matter.

## V. Statement of Facts

33.   Counterclaim-Plaintiff/Third-Party Plaintiff, **Henri Beaulieu** ("Henri Beaulieu"), and Henri Beaulieu's mother, Third-Party Plaintiff, **Johnie Beaulieu** ("Johnie Beaulieu") (collectively "the Beaulieus"), reside on six acres of property located at 5839 Smokey Road, Calera, Alabama. Johnie Beaulieu purchased the

property with her husband in the 1980s. Henri Beaulieu has resided on the property since approximately 1990. Johnie, the surviving owner, has lived on the property for over twenty-five years. The Beaulieu property is approximately 1.5 to 2 miles south and west of the Airport.

34.  Since mid-2023, and particularly since mid-November 2023, significant and recurrent noise from planes flown out of and into the Airport has caused substantial harm to the Beaulieus and the nearby residential community.

35.  The plane noise is primarily but not solely attributable to private, for-profit flight school instruction and flight training conducted out of the Airport. The noise from planes near and over the Beaulieu property and nearby residential areas includes successive circling of planes doing touch-and-go maneuvers out of the Airport. The noise includes deliberate gunning of engines and other activity to heighten noise.

36.  This noise can be heard any day of the week, early in the morning and late into the evening, weekdays, weekends, and holidays, disrupting the peacefulness, tranquility, and enjoyment of the Beaulieus' property and causing significant discomfort and annoyance. The noise can persist continuously for hours, with individual aircraft circling the area up to seventeen or more times (taking approximately an hour and a half) in a single session, and, at times, with three or

more aircraft circling simultaneously. The noise is clearly heard inside the Beaulieu residences causing stress and making it difficult to concentrate on daily activities. At times, the noise is so persistent that it disrupts sleep and creates a recurrent, jarring presence that prevents the Beaulieus from enjoying their property as they once did. This significant and ongoing disruption has not only diminished their quality of life but has also effectively deprived them of the full use and value of their property.

37. Some planes are flown over and near the Beaulieu property intentionally tilted at an angle so that their tail numbers are not identifiable from below. Some planes have been flown directly over the Beaulieus' homes (showing only the bottom of the plane) but are identifiable from markings on the plane or are identifiable by the sound they make. Some planes flown over and near the Beaulieu property have their ADS-B (Automatic Dependent Surveillance-Broadcast) transmitters deliberately turned off, preventing their identification. This conduct indicates a deliberate effort to cause harm with plane noise while attempting to avoid identification.

38. Planes have been flown over and nearby the Beaulieu property that, at various times, appear to be part of a coordinated effort to perpetuate a noise nuisance, including planes coming from outside the Birmingham area. Some

planes have been observed to veer over to deliberately fly over, or in close proximity to, the Beaulieu property, seemingly with the intent to cause excessive noise and inflict harm upon the Beaulieus. There appears to be a coordinated system of communication between the County and Airport users and/or between Airport users themselves to encourage and facilitate these actions.

39.  The Beaulieus have observed increased plane traffic near and/or over their property following noise complaints - especially to the County, and, inconceivably, even after filings made in these court proceedings, clearly as a retaliatory effort to harass the Beaulieus.

40.  The recurrent, substantial, and even deliberate, noise is from private planes, for-profit flight schools and training operations, and even planes from outside the area who use the Airport for flight training. This noise appears to have increased even more since the Beaulieus began communicating noise complaints to the County or Airport users. Further, some of the County's pleasure-flying hangar tenants at the Airport have operated or allowed others to operate their planes for flight training purposes in violation of their leases with the County which prohibit commercial aviation activities, including flight instruction, without the written approval of the County.

41. It is estimated that there are as many as seventeen or more flight

instructors operating out of the Airport for flight training purposes. This was reported to the County Defendants  - the County responded with a cease-and-desist letter three (3) days later.

### (Facts Related Directly to the County)

42.   The Airport, is owned by Counterclaim-Defendant, **Shelby County ("the County")**, and is operated under the authority of Third-Party Defendant, **Shelby County Commission**.  The Airport is an unregulated, public use, general aviation facility that has been in operation in some form since before 1965. The Airport leases hangars and other spaces for airplane storage. The Airport also sells plane fuel, which the County seemingly provides for free to the Airport.

43.   The Airport applies for and receives FAA Airport Improvement Program (AIP) grants. The relationship between the Airport and the FAA is contractual, not regulatory. The Beaulieus understand that in accepting federal grant monies, the County accepted federal grant assurances, i.e., mandates that govern the County's use of the granted funds.

44.  The Beaulieus and others understood that the Airport, as a small public facility, would not be expanded beyond its existing boundaries or into a commercial airport. To support this, the County sold Airport land south of the existing facility years ago, only to indicate in recent FAA grant applications and

future airport plans that it intends to repurchase this same land in the future expansion. This not only suggests a plan for southward expansion that was not openly communicated to the community, it raises public ethics questions as well.

45.  The Airport qualifies as a municipal airport under Alabama law, as it is under the direct control and management of the County (Ala. Code § 4-4-1(5)).

46.  Under Ala. Code § 4-4-1(6), the Airport is expressly prohibited from relinquishing control over airport privileges and concessions. Flight schools and training operations fall under these privileges and/or concessions. The County's acceptance of federal grant assurances/mandates constitutes a relinquishment of control over these Airport privileges and concessions.

47.  According to general federal grant assurances/mandates, the Airport is supposed to be self-supporting, and the money generated by the Airport must remain within the Airport. Henri Beaulieu discovered that the County provides annual funding to the Airport, but he found no accounting for where the revenue generated from the Airport goes. Henri Beaulieu raised these issues to the County defendants (see Exhibit "B" attached and referenced hereinbelow). He received no response.

48.  Until recently, the Shelby County Aviation Association acknowledged that planes flying over residential areas south and west of the Airport was a major

issue. Its website featured a section containing a list of 'Shelby County Acceptable Airport Practices,' which advised Airport users to: "Please remember the proper traffic patterns and the request for noise abatement in the areas south and west of the airport. Our voluntary action might well prevent mandatory action from outside sources."[1]  This guideline has now been removed from the website suggesting a deliberate attempt to harass the Beaulieus.

49. In mid-November 2023, due to the plane traffic and noise, Henri called the Airport to complain. Henri was told to "call the FAA" and that planes could do "touch-and-goes all day if they want to."

50.  In November 2023, Henri Beaulieu began sending emails to County officials about the noise issues from the Airport. He later sent emails concerning issues he had uncovered concerning Airport-related practices and concerns that may be characterized as malfeasance. [See three (3) emails sent by Henri Beaulieu to the County thoroughly documenting issues, attached collectively hereto as Exhibit "A": 1) Dec. 4, 2023, email that included Airport usage issues and lack of transparency with regard to Airport revenue and expenditures; 2) Feb. 16, 2024, email that included a list of issues and questions about County conduct that he had discovered; and 3) Mar. 15, 2024, email that included concerns about the number

---

[1]  Source: https://www.Airporta.us/misc/shelby_county_airport_practices.pdf

of flight instructors at the Airport and the County's lack of action; in response, the County silenced him and sued him in an act of retaliation against his whistleblowing.]

51.   Other than an initial email response from Third-Party Defendant, Chad Scroggins ("Scroggins"), that "[w]e have not changed any operations at the Shelby County Airport nor are we aware of any changes in similar airports in our region. I am sorry that you don't appreciate the answer that we have not changed operations or nothing has changed regionally, but it is fact to the best of our knowledge," Henri Beaulieu did not receive any material responses to his emails from the County Defendants.

52.   None of the Commissioners ever requested that Henri cease communications until March 21, 2024.

53.   Henri also sent some emails concerning the noise disturbances to Third-Party Defendant, Barry K. Franks ("Franks"). Franks did not respond at all to Henri's emails. Franks' flight school businesses continued to cause harm to Henri Beaulieu and his family. Henri communicated via email to Third-Party Defendant, Birmingham Flight Center ("BFC") about the noise their planes were causing over and near the Beaulieu property. Because there was no response from BFC to the emails and their actions continued, Henri called BFC one time and BFC confirmed

it had received the emails.

54.   Since 2023, and particularly in November 2023, plane traffic had markedly increased from the Airport. The Beaulieus began to experience episodes of deliberate flyovers of planes that would come from elsewhere, fly near or directly over the Beaulieu property, and then return to their origins. Flight schools outside the Airport have been observed flying to the area, suggesting intentional actions while other Alabama airports remain unused. Patterns suggested that County employees, agents, and other Airport users invited pilots to create or intensify noise nuisances, harming the Beaulieus and other residents. This activity indicates a deliberate manipulation of facts and usage data to perpetuate the nuisance and punish the Beaulieus.

55.   Third-Party Defendant, **Terry Franklin** ("Franklin"), has been the Airport Manager and 'Aviation Supervisor' for many years. He has firsthand knowledge of activities at the Airport and is understood to be the managing person onsite at the Airport. Franklin is a board member of the Aviation Council of Alabama, Inc., which promotes the interests of Alabama's airports. Franklin was included in communications from Henri but did not respond to any communication from Henri.

56.   On December 22, 2023, Attorney Donna Beaulieu hand-delivered a

Notice of Claim to the County on behalf of Henri and Johnie Beaulieu, and Henri's father (now deceased), with regard to noise issues from the Airport pursuant to Alabama Code §6-5-20, which requires a claim to be presented to the county commission before filing a lawsuit against the county, and Alabama Code §11-12-5 mandates a 90-day waiting period after presenting the claim before a lawsuit can be filed if the county does not act on the claim. The County did not act on the claim.

57.  Henri Beaulieu requested information from the County via Freedom of Information Act (FOIA) requests. One request was met with a demand for payment of a highly unreasonable hourly rate for record retrieval, which Henri refused to pay. From the information he did obtain, and through other investigations, Henri began to piece together a suspicious pattern and practice on the part of the County defendants concerning the operation and management of the Airport.

58.  The information Henri Beaulieu uncovered gave him concerns about ethical practices, including the use of public Airport property for non-aeronautical purposes, including the County and/or its officials permitting a private individual company to run a for-profit boat sales business on Airport property, and allowing the company to engage in subleasing, poor maintenance, and traffic hazards, despite the County being repeatedly informed of these issues.

59. Henri also uncovered evidence that the County and/or its officials were

also permitting, in violation of FAA grant assurances/mandates or County lease provisions, the storing of vehicles and non-aviation items in hangars, washing of stored cars at the hangars, permitting private events to be held in hangars, and permitting cooking in hangars. The County also cuts the grass on property not owned by the County at the south end of the Airport - land the County sold but intends to repurchase back from the buyer in the future. The County defendants selectively enforce grant assurances/mandates that benefit the for-profit flight school/training operations and their pilots, while disregarding assurances/mandates that do not favor said operations and pilots.  The County defendants selectively enforce Airport lease provisions as well. The County ignores provisions that would harm instructors but, in turn, would benefit the public, e.g., enforcing the provisions that prohibit commercial activities at hangars, flight instruction, etc. Overall, these actions reflect a pattern of unethical conduct, lack of accountability, and misuse of public resources.

60.  Henri Beaulieu informed the County defendants about the evidence he had uncovered, requesting an investigation into the issues, and notified them of ongoing noise nuisances, ethics violations, and possible federal fraud. (Ex."A") Despite this, the noise nuisance and ethics violations continue, and legal action was taken in retaliation against Henri Beaulieu as a whistleblower.

61. On March 11, 2024, the Shelby County Commission (all members) voted at the regular commission meeting to go into Executive Session on motion of Commissioners Allison and Brumlow to "discuss pending General Reputation and Character" (Resolution No. 2024-03-11-16).

62. The County claimed that a pilot and airplane owner reportedly attended the March 11, 2024, commission meeting to complain about Henri Beaulieu and the alleged impact of his complaints on the Airport. However, the pilot's attendance, identity, and the content of their comments are not recorded in the meeting minutes. Henri Beaulieu was not provided a notice of the executive session or given an opportunity to defend himself.

63. Prior to March 14, 2024, Henri Beaulieu learned that the latest "Topgun" movie was planned to be shown on March 14, 2024, in the large Airport hangar rented to Third-Party Defendant, American Drilling of Alabama, Inc., and/or Third-Party Defendant, Charles Edward Poskey ("Poskey"). The initial notice of the movie event at the American Drilling hangar included an invitation to the general public to attend and join the local pilot's association. After Henri complained to the County about the hangar being used for a non-aeronautical purpose, the notice was amended to remove the public invitation and add that Airport matters would be discussed. Henri expressed concern to the County that

attendees would discuss ways to harm him and his family.

64.   To see if the movie event was still happening despite Henri's notice to the County that the event violated grant assurances/mandates and the hangar lease, on the evening of March 14, 2024, Henri Beaulieu and Donna Beaulieu drove to a public park-and-ride parking lot at the Airport. In the distance, they observed a Shelby County Sheriff's vehicle parked outside the hangar. The Beaulieus observed that the event was still happening and proceeded to leave. Within moments, Poskey was seen outside the hangar, motioning at the Beaulieus' vehicle. Beaulieu returned in his vehicle to the park-and-ride parking lot thinking someone wanted to discuss something with him. Poskey then got in his truck and approached the Beaulieus, attempting to pull up next to Donna. Out of safety concerns, Henri repositioned his truck to respond to Poskey himself.

65. Poskey misrepresented himself, claiming his name was "Frank," and stated he knew who Henri Beaulieu was and where he lived. Henri and Poskey spoke about Airport issues for more than fifty (50)  minutes. Poskey confirmed that twenty pilots were watching a movie in the hangar and mentioned that a picture of Henri had previously been "passed around." Poskey indicated that the environment at the Airport was hostile and that pilots were upset, including at each other. No one else came out of the hangar during their conversation.

66. During the conversation, Poskey could not articulate what Henri had done that was considered harassment. However, Poskey stated he would call County Attorney Ellis the next day to "stop this s**t" and "get a cease-and-desist."

67. For four (4) months, Henri Beaulieu implored the County to take action. The County did not even provide a material written response to Henri Beaulieu's emails about the Airport or the related ethics issues he raised. However, once a pilot complained, and Poskey contacted County Attorney Ellis to get a cease and desist, the County swiftly acted by passing the Resolution and filing the lawsuit against Henri, despite knowing he had ceased communications after March 21, 2024.

68. Four (4) days after Henri's conversation with Poskey wherein he threatened to get a cease-and-desist, a cease-and-desist letter dated March 18, 2024, was issued by the County's attorney Third-Party Defendant, **J. Bentley Owens ("Owens"),** and sent to Henri's address via regular mail. The letter was received by Henri Beaulieu on March 21, 2024, when his concerned son, a nurse/CRNA, brought the letter in from the mailbox with the day's mail. Upon receipt, Henri Beaulieu immediately complied and ceased all further communications.

69. Henri immediately called the County attorney's office, left a message for Owens confirming receipt of the letter, and requested a return call from Owens who

did not return the call.

70.  To reiterate, no one from the County requested Henri to cease communications before March 21, 2024. Counsel, Donna Beaulieu, emailed County Attorney Ellis to inquire whether his firm represented Poskey, but did not receive a reply, further suggesting coordination between Poskey, the County and the County attorneys (Owens and Ellis), to stop Henri from gathering evidence and to silence him.

71.  On March 25, 2024, four (4) days after Henri ceased all communications, the County Commission passed Resolution No. 2024-03-25-09 (the "Resolution') at their regular meeting. The Resolution authorized legal action to be taken against Henri Beaulieu based on the false claim that his activities had "continued and intensified." (See the Resolution, the Cease-and-Desist Letter, and the Beaulieus' Notice of Claim attached collectively hereto as Exhibit "B")

72.  The Resolution, which was categorically based on untrue allegations, could have simply authorized legal action without detailing specific claims. Despite knowing Henri had ceased all communications upon receiving the cease-and-desist letter, the County defendants included these details to maliciously defame and silence Henri. This smear campaign, published in the County Commission's minutes, which are available on the County website for everyone to see, evidences

the County's intent to malign and silence Henri at any cost for his legitimate complaints about airplane noise and ethical concerns.

73.   The Resolution was passed unanimously by the five of the nine commissioners present at the meeting, and was later approved by all Commission members. The Resolution alleged that Henri Beaulieu had exceeded the limits of free speech and petition and his communications to the County and other actions constituted harassment and a threat to Airport operations. (Ex."B") The Resolution stated that the Commission was authorizing its counsel to "initiate legal proceedings to enjoin the claimants from further interference with the County's airport operations, seek damages for continued interference, and pursue any other relief to which the County may be entitled." (Ex."B")  The Commission further authorized County/Airport Manager Scroggins to assist in the prosecution of any action to "protect county employees from continued harassment, and take all necessary actions to preserve and protect the integrity and operations of the airport." (Ex."B")

74.   The Resolution was passed as an unconstitutional government action to silence protected speech taken by the Commissioners who are sworn to uphold the Constitution, including the two attorneys on the Commission who should be held to an even higher standard. The Resolution, with its wholly false allegations, is posted

online in the commission's minutes for anyone in the County to see. Henri's counsel sent a demand for a retraction of the defamatory statements made against Henri on April 3, 2024, but no retraction has been made.

75.  On April 2, 2024, twelve (12) days after Henri complied with the cease-and-desist letter, the County knowingly filed the frivolous lawsuit against Henri Beaulieu in state court (Doc.1).  The Complaint states at ¶13 that Henri's "acts of intimidation and harassment persist," despite knowing that Henri stopped any communications twelve (12) days prior.  Instead of taking days or weeks, Henri was personally served at home by a sheriff deputy within hours of the case being filed.  The suit (which was removed to this Court) seeks to permanently suppress Henri's protected speech and whistleblowing. The Complaint was signed by County/Airport Manager Scroggins, approved by the County Commission, and undersigned by County Attorney Ellis.  County Attorney Owens, who had issued the cease-and-desist letter, entered an appearance as counsel for the County in the case as well.

76.  Henri Beaulieu has refrained, and continues to refrain, from any further communication with the County, County-related individuals, or any other persons regarding the Airport since March 21, 2024, out of fear of retaliation against himself or potential witnesses by the County. Henri ceased his legitimate

communications not due to any admission of wrongdoing, but because he fears additional actions, including possible criminal prosecution, being taken against him under color of authority.

77.  On April 30, 2024, Henri encountered a County vehicle on his way to the grocery store. The County vehicle did not have a designated department on it, indicating an administrative person - such as an airport manager. The vehicle entered the Publix parking lot in front of Henri, and a man who resembled Third-Party Defendant, Terry Franklin, exited the car and went into the store. Concerned that the County employee might falsely accuse him of stalking or harassment, Henri did not get out of his car and instead abandoned his shopping trip. The County's actions have deprived Henri not only of his freedom of speech and petition rights, but also his freedom of association.

78.  The community around the Airport has seen significant residential growth, with approximately 5,000 residents now in the vicinity and more home construction underway. The pilots in the air, flying out of the Airport, have the best vantage point to see the growth of residential areas, yet they continue to fly over homes, showing a clear disregard for the increasing development and the well-being of the residents. The average home value in a subdivision in the area are estimated to be around $290,000. Henri estimated the market value of the Beaulieu

property (six acres with three homes on it) at over two million dollars.

79.  Complaints by the Beaulieus about plane noise in the past were very rare, and noise disturbances were not recurrent or pervasive. The increase in plane traffic and substantial noise, along with the County's willful refusal to address these issues in favor of business interests and flight school profits, demonstrates a deliberate disregard for community well-being. The community bears the burden of this use of public property, while the benefits go solely to the specific limited users who use the Airport.

### (Facts Related to Flight Schools/Flight Training and Plane Owner/Operators)

80.  Third-Party Defendant, **Over the Mountain Aviation, LLC ("OTM")**, formed in July of 2012, is a for-profit flight training business out of the Airport. OTM is one of the County's two (2) designated flight schools at the Airport. Two (2) airplanes now registered in OTM's name are used to conduct flight training activities out of the Airport. OTM rents hangar spaces at the Airport, advertises its services there, and has its office at the Airport. OTM's planes have been repeatedly heard and observed causing or contributing to a significant noise nuisance. Noise from the operations of OTM's planes, or operations permitted by OTM, has caused the Beaulieus recurrent harm from noise, including infringing upon and depriving

the Beaulieus of the use and quiet enjoyment of their property. OTM has operated one or more of its planes, or permitted one or more of its planes, to be operated with the ADS-B transmitter(s) turned off.

81. Third-Party Defendant, **Slipstream Aviation, LLC ("Slipstream")**, formed in February of 2017, is another for-profit flight training business at the Airport. Slipstream owns and operates at least five (5) planes out of the Airport and conducts flight training activities out of the Airport in these planes. Many of Slipstream's planes are featured on OTM's website for use or lease. Slipstream's planes have been repeatedly heard and observed causing or contributing to a significant noise nuisance. Noise from the operations of Slipstream's planes, or operations permitted by Slipstream, has caused the Beaulieus recurrent harm, including infringing upon and depriving the Beaulieus of the use and quiet enjoyment of their property.

82. Third-Party Defendant, **Barry Franks ("Franks")**, is an organizer and registered agent of OTM, and he is Slipstream's registered agent. Franks is a registered pilot and OTM's Chief Flight Instructor. Franks lives in Calera at 4911 Stonecreek Way, which is approximately over two and a half miles south and west of the Airport. This address appears to be his residence address and is the address Franks lists for himself as the registered agent for OTM and Slipstream. Franks

signed OTM's lease with the County in his personal capacity. Franks is a registered pilot and is listed as OTM's Chief flight instructor. Franks has added to his list of flight instructors and purchased one or more additional planes since November 2023 to add to his fleet of planes, despite notice of the noise nuisance complaints concerning planes in OTM's and Slipstream's planes. Franks is being sued both individually and as the alter ego of OTM and Slipstream.

83.   OTM currently has fourteen (14) flight instructors and operates two (2) aircraft registered under its name for flight school/training purposes. One of these aircraft (N6602H) was flown, or permitted to be flown, as part of Franks' operations, for several of the past months while being listed with the FAA as "registration pending" following its purchase. The registration was updated with the FAA to show the plane in OTM's name only a few weeks ago. Noise from both of OTM's planes, including the N6602H plane before it was registered to OTM, has significantly caused harm to the Beaulieus, including deliberately. The noise has impacted the Beaulieus' property rights and caused the Beaulieus recurrent and substantial harm. This plane has been flown with its ADS-B transmitter turned off as well.

84.   Franks,' OTM's, and Slipstream's planes, mostly small, old model, loud, singe-engine planes, operated for profit, have performed multitudes of touch-

and-goes, climbing and circling over and near the Beaulieu property. Some have been flown or have been permitted to be flown deliberately over the Beaulieu property, including with their ADS-B transmitters off. Noise from these planes can be heard up to seven days per week and on weekends and holidays, early morning and into the evening. At times, these planes, and other planes, have flown near the Beaulieu property approximately every five minutes. Slipstream planes have awakened the Beaulieus well before 7:00 A.M., and circling can continue for hours - with more than one plane out at a time. A loud OTM plane was heard repeatedly "making circles" in the air on Thanksgiving Day 2023.

85.  The growth in flight training operations, including by Franks and his businesses for profit, continues regardless of the impact on the Beaulieus and the local community. The County, for its part, has permitted flight schools and training operations at the Airport, along with other non-resident hangared planes, to operate unchecked, causing substantial noise. The County's actions have allowed the Airport to become a hub for flight schools and training operations, prioritizing these for-profit interests over those of the Beaulieus and of the community.

86.  Third-Party Defendant, **WaterWings Seaplanes, LLC ("WaterWings")**, formed in 2004, is the second of the two (2) permitted for-profit flight schools at the Airport. WaterWings apparently conducted flight instruction

operations at the Airport long before receiving written approval to do so from the County.

87.  Third-Party Defendant, **Charles Welden ("Welden")**, is the sole member and registered agent for WaterWings. Welden is a registered pilot and a flight instructor/trainer for seaplanes, floatplanes, and water planes. Welden signed WaterWings' lease with the Shelby County Airport in his individual capacity. He is being sued both individually and as the alter ego of the business, WaterWings Seaplanes, LLC.

88.  On its website, WaterWings advertises its use and alleged ownership of Plane N730MC, a loud, twin-engine plane ("Plane N730MC"). Plane N730MC is not a seaplane, floatplane, or water plane.  The FAA plane registry indicates that Plane N730MC is owned by "CPC2 Aviation, LLC."  The address listed for CPC2 Aviation, LLC, is 2013 Bridgelake Drive, Hoover, Alabama - the same address Welden uses as the registered agent address for WaterWings. This address appears to be Welden's residence address.

89.  According to the Alabama Secretary of State's website, CPC2 Aviation, LLC, was formed in 2018 by Third-Party Defendant, **Cary Patrick Cook ("Cook")**, who is a pilot. Cook subsequently dissolved CPC2 Aviation, LLC, in October 2023, but Plane N730MC's registration with the FAA remains listed in the

(dissolved) CPC2 Aviation, LLC, name. Plane N730MC is being used, or is being permitted to be used, for commercial activity for profit by WaterWings and/or Welden and/or Cook.

90. Since November of 2023, more so recently, Plane N730MC has been flown repeatedly near and over the Beaulieus' property causing recurrent and substantial noise disturbances. Plane N730MC is distinctive in appearance and sound. Some operations conducted in Plane N730MC are deliberate and retaliatory. Noise from the operations or permitted operations from Plane N730MC has caused the Beaulieus recurrent harm, including infringing upon and depriving the Beaulieus of the use and quiet enjoyment of their property.

91. Attempts were made to reach Cook regarding Plane N730MC, the noise nuisance, and intended litigation against the County. Cook dismissed the matter, (facetiously) stating he was not interested unless there was financial gain for him. The Beaulieus seek a declaration of the true owner and operator of Plane N730MC to ensure accountability in this suit.

92. Third-Party Defendants, **Robert S. Grant and Deborah D. Grant, Kevin McKee and Rhonda L. Carter, and David B. Etheredge and Michael J. Metcalf**, are individual co-owners of planes hangared at the Airport as follows: N130DG (Grant), N7674F (McKee/Carter), and N3714F (Etheredge/Metcalf).

Since November of 2023, these owners' planes have been operated near and/or over the Beaulieus' property causing or contributing to a significant noise nuisance. These planes also appear to have been operated, or have been permitted to be operated, for flight instruction activities in violation of the County's Airport leases with these individuals. Planes registered to these individuals have been heard causing noise nuisances at particular times since the noise nuisance issue was raised by the Beaulieus with the County or others, suggesting retaliation.

93.   Third-Party Defendants, **Robert Scott Grant and Deborah D. Grant**, are joint registered owners of plane N130DG, and Robert Scott Grant is a registered pilot. Mr. Grant is also listed as a part-time instructor at Birmingham Flight Center. Mr. Grant is a current or past president of the Shelby County Aviation Association. The Grants do not have a permitted flight school at the Airport, but this plane appears to have been used, or has been permitted to be used, for flight training purposes. Plane N130DG has been heard and observed causing or contributing to a significant noise nuisance, including making hard turns and gunning the engines. Noise from the operations or permitted operations of Plane N130DG has caused the Beaulieus recurrent harm, including infringing upon and depriving the Beaulieus of the use and quiet enjoyment of their property.

94.   Third-Party Defendants, **Kevin McKee and Rhonda Carter**, are joint

registered owners of plane N7674F, and Kevin McKee is a registered pilot. These parties do not have a permitted flight school at the Airport, but this plane appears to have been used or permitted to be used for flight training purposes. Plane N7674F was heard and observed causing or contributing to a significant noise nuisance. Noise from the operations or permitted operations of Plane N7674F has caused the Beaulieus recurrent harm, including infringing upon and depriving the Beaulieus of the use and quiet enjoyment of their property. This plane has been observed to be flown with the ADS-B transmitter turned off.

95.   Third-Party Defendants, **David B. Etheredge and Michael J. Metcalf**, are joint registered owners of plane N3714F, and both parties are registered pilots. These parties do not have a permitted flight school at the Airport, but this plane appears to have been used or permitted to be used for flight training purposes. Plane N3714F was heard and observed causing or contributing to a significant noise nuisance. Noise from the operations or permitted operations of Plane N3714F has caused the Beaulieus recurrent harm, including infringing upon and depriving the Beaulieus of the use and quiet enjoyment of their property.

96.   Third-Party Defendant, **American Drilling of Alabama, Inc. ("American Drilling")**, is the registered owner of plane N63895, which is hangared at the Airport. American Drilling's incorporator and registered agent,

Third-Party Defendant, **Charles Edward Poskey ("Poskey')**, is a registered pilot. Plane N63895 has been flown, or permitted to be flown, over and/or near the Beaulieus' homes and property, including awakening them in the early morning, without just cause. The plane has been observed to have veered over toward the Beaulieu property in flight. Noise from American Drilling's and/or Poskey's operations, or operations permitted by them, of Plane N63895 has caused or contributed to a significant noise nuisance that has caused the Beaulieus recurrent harm and infringed upon and deprived the Beaulieus of the use and quiet enjoyment of their property. Poskey is being sued both individually and as the alter ego of American Drilling.

97.   Third-Party Defendant, **Birmingham Flight Center, LLC ("BFC")**, operates a flight training school with a principal office in Birmingham, Alabama. BFC is not a permitted flight school at the Airport. However, BFC uses the Airport to conduct flight instruction and flight training operations, causing and contributing to the noise nuisance from the Airport. Planes registered to BFC, including N172SB and N738SJ, have been flown from Birmingham down to Shelby County to use the Airport for training purposes, even during times of high local air and training traffic at the Airport, knowingly exacerbating the noise.

98.   BFC has permitted its planes to be used for flight instruction and/or

training purposes from the Airport. Planes N172SB and N738SJ have been flown, or permitted to be flown, over and near the Beaulieus' homes and property.  Noise from BFC's operations in BFC's planes, or operations permitted by BFC, including, but not necessarily limited to, from planes N172SB and N738SJ, has caused and/or contributed to a significant nuisance that has caused the Beaulieus recurrent harm, including infringing upon and depriving the Beaulieus of the use and quiet enjoyment of their property. One or more BFC's planes are distinctive and have been observed to be flown with the ADS-B transmitter turned off, including directly and repeatedly over the Beaulieu property.

99.  Planes leaving out of, returning to, or circling in and out of the Airport continue to be flown near and over the Beaulieu property. Some mornings, planes are leaving out, coming in, or circling every few minutes. Some planes circle for hours on end - some in the morning, some into the evening and well after dark, and some times all day long, any day of the week.

100.  An FAA representative relayed to Henri Beaulieu that no planes, except for the occasional, inadvertent plane arriving from the southwest, should be flying over the Beaulieu property.

101.  Each action causing noise from these planes' operations, including repeated touch-and-goes, rumbling, humming, and "gunning" of the engines,

causes direct harm to the Beaulieus and constitutes a separate injury.

102. Despite the County's alleged concern over airport safety, Henri Beaulieu has witnessed numerous aircraft flying over or near his property with their ADS-B transmitters deactivated. This practice compromises the safety of other aircraft and hinders identification on flight tracking radar, suggesting deliberate harassment. Furthermore, the Airport has likely deactivated its ADS-B receiver, which allows planes to "see" each other. Deactivating the receiver prevents the tracking of planes, despite standard protocol to keep them operational for 'safety' reasons. This is particularly concerning given the County's purported commitment to Airport safety as stated in its lawsuit filed against Henri Beaulieu, and its allegations that Henri interfered with 'safety' which the County claimed as the basis for its lawsuit against Henri to prevent him from communicating about Airport issues. The Airport's actions regarding the ADS-B receiver suggest a deliberate effort to conceal or manipulate facts or evidence.

103.  The plane noise has significantly impacted Plaintiffs' quality of life, causing disturbance in work, daily activities, and rest, and contributing to stress and discomfort.

104. The Beaulieus have included Fictitious Defendants in this action because they believe that there are other individuals or entities, including County

officials, agents, and employees, County tenants at the Airport, plane owners at the

Airport, including flight schools, instructors, trainers, pilots, and students, who

have caused or contributed, including deliberately, to the harm alleged herein, but

whose identities and specific roles are not yet known to Plaintiffs.

## A. Federal Claims

## COUNT I: Violation of First Amendment Rights - 42 U.S.C. § 1983

*(Violations of First Amendment Rights: Free Speech, Petition, and Association)*

105. Henri Beaulieu alleges that the Third-Party County Defendants -

including the County, the County Commission, individual Commissioners

County/Airport Manager, Chad Scroggins, Airport Manager/Aviation Supervisor,

Terry Franklin, County Attorneys Owens and Ellis, and Fictitious Defendants A, B,

C, D, and E - individually and in their official capacities, and under color of

authority and state law - prepared, endorsed, approved, and used the

cease-and-desist letter, the Resolution, and the lawsuit, including threats of

criminal prosecution, to willfully and maliciously silence Henri's noise complaints

and whistleblowing activities. These actions aimed to chill his First Amendment

rights to free speech, petition, and freedom of association, intentionally and/or

wantonly depriving him of his constitutional rights.

106.  Poskey, a private citizen, also acted under color of authority as a state

actor by coordinating with above County officials, particularly County Attorney Ellis, who Poskey said he would call to 'get a cease-and-desist,' to deprive Henri of his First Amendment rights. After Poskey's call to County Attorney Ellis, a cease-and-desist letter was issued within days, indicating his involvement in the effort to silence Henri.

107.  Despite Henri ceasing communications on March 21, 2024, the County Commission passed Resolution No. 2024-03-25-09 on March 25, 2024, authorizing legal action against him based on false claims that his activities had continued and intensified. (Ex."B") On April 2, 2024, the County filed a lawsuit against Henri, seeking to enjoin his protected speech and petition rights, including through threats of criminal prosecution, and asserting baseless tort claims against him.

108. These actions were clearly intentional and/or wanton attempts to suppress Henri Beaulieu's protected speech and petition rights - and his rights continue to be suppressed.

109.  Henri Beaulieu also alleges that the retaliatory conduct of the Third-Party County Defendants created a chilling effect on his First Amendment right to freedom of association. Due to the legal threats made by the Defendants, including criminal threats, Henri was unable to freely access Publix, a place of public accommodation, out of fear of encountering a County employee, believed to

be the Airport Manager, and potential legal action. This specific incident, viewed in the context of the Third-Party County Defendants' alleged retaliation against Henri for his whistleblowing activities, evidences a significant infringement on his First Amendment rights.

110.   These actions resulted in harm to Henri Beaulieu and a deprivation of his constitutional rights, causing past and continuing irreparable harm and damages.

WHEREFORE, Henri Beaulieu respectfully requests the following relief:

A.  A declaratory judgment that the actions of the Third-Party County Defendants, including the County, the County Commission, the individual Commissioners (whether present and voting or not), Chad Scroggins and Terry Franklin, Attorneys Owens and Ellis, in their official capacities and in their individual capacities, and Charles Edward Poskey, individually and on behalf of American Drilling of Alabama, Inc., and Fictitious Defendants, A through E, violated Henri's First Amendment rights, and that his protected speech and petition rights are restored to him, along with the restoration of his freedom of association rights;

B. Injunctive relief to prevent further retaliatory or punitive actions against Henri Beaulieu;

C. Compensatory and punitive damages for the emotional distress and other damages caused by these constitutional violations;

D. An award of costs and attorney's fees under 42 U.S.C. § 1988 as appropriate for this civil rights enforcement action; and

E. Such other and further relief as the Court deems just and proper.


**COUNT II: Violation of Fifth Amendment Rights - 42 U.S.C. § 1983**

111.  Third-Party Plaintiffs, Johnie and Henri Beaulieu, have resided on their six-acre property south and west of the Airport for twenty-five to over thirty years. Johnie is the surviving owner of the property, and Henri will inherit it in the future.

112.  Since 2023, and particularly since November of 2023, the County defendants, the County, the County Commission, the individual Commissioners, County/Airport Manager Chad Scroggins, Airport Manager/Aviation Supervisor (onsite) Terry Franklin, and Fictitious Defendants A, B, C, D, and E, (the "Third-Party County Defendants"), acting under color of state law, have allowed the unchecked expansion of for-profit flight schools, flight training, and other noise-producing operations from the Airport. This has resulted in excessive noise that substantially interferes with the Beaulieus' use and enjoyment of their property.

113.  The noise disturbance has persisted to the point of recurrently

disturbing them inside their home and on their property. Planes from the Airport, including pleasure-flying planes, jets, and those performing training operations, now use the skies over residential areas, including the Beaulieus' property, as an effective extension of the runway or a training track for touch-and-go maneuvers, even up to and over a mile and a half away from the Airport.

114.   Despite numerous complaints from Henri Beaulieu and a Notice of Claim by Attorney Donna Beaulieu on behalf of Henri and Johnie Beaulieu, the Third-Party County Defendants have deliberately, willfully, and/or wantonly:

A)  Refused to address and control the expansion of flight school and training operations causing noise harm to the Beaulieus;

B)  Refused to address and control the persistent noise nuisance over and near the Beaulieu property; and

C)  Refused to enforce lease agreements prohibiting plane owners from conducting flight instruction activities without written County approval.

115.   Henri and Johnie Beaulieu allege that these Third-Party County Defendants have willfully and/or wantonly deprived them of the benefits of ownership, use, and quiet enjoyment of their property without due process, in violation of the Fifth Amendment.

116.   The absence of any meaningful opportunity to be heard or seek redress,

coupled with the abuse of legal processes and fear of arrest preventing attendance at county meetings or any communication, contributes to this deprivation of their property rights.

117.  The silencing of Henri and Johnie Beaulieu by these Third-Party County Defendants, through the cease-and-desist letter, the Resolution, and the lawsuit, has further exacerbated the taking of their property rights. This suppression of their First Amendment rights prevents them from communicating about their noise complaints and whistleblowing activities, contributing to the deprivation of their property rights without due process.

118. The actions and inactions of the Third-Party County Defendants have been intentional and/or wanton, resulting in substantial and unreasonable interference with Henri's and Johnie's property rights. This interference has deprived them of the benefits of ownership and quiet enjoyment without just compensation, violating their due process rights under the Fifth Amendment.

119. These Third-Party County Defendants are sued in their official and individual capacities for knowing and intentional violations of Henri and Johnie's Fifth Amendment rights. Their actions have caused Henri and Johnie Beaulieu past and continuing irreparable harm and damages.

WHEREFORE, Henri Beaulieu and Johnie Beaulieu respectfully request the

following relief:

A.  A declaratory judgment that the interference caused by the Airport noise constitutes a taking of their property for public use without just compensation, in violation of the Fifth Amendment to the United States Constitution;

B.  A declaration that the actions and inactions of these Third-Party County Defendants, named and fictitious, resulting in the taking of Henri's and Johnie's property and property rights without just compensation, also violated their due process rights under the Fifth Amendment to the U.S. Constitution;

C.  An award of just compensation for the diminution in value of their property and the loss of their right to quiet enjoyment caused by the taking, and an award therefor as deemed appropriate based on the facts of this case;

D. An award of compensatory and punitive damages as appropriate;

E.  An award of costs and attorney's fees for their attorney under 42 U.S.C. §1988 as appropriate for this civil rights enforcement action; and

F.  Such other and further relief as the Court deems just and proper.


## COUNT III: Violation of Fourteenth Amendment Due Process Rights - 42 U.S.C. § 1983

120. The Fourteenth Amendment guarantees that no state shall deprive any

person of life, liberty, or property without due process of law. Henri and Johnie

Beaulieu allege that the actions and inactions of the Third-Party County

Defendants, including the County, the County Commission, the individual

Commissioners, Chad Scroggins, and Terry Franklin, and Fictitious Defendants, A,

B, C, D, and E, (the "Third-Party County Defendants") acting under color of state

law, have violated their substantive and procedural due process rights.

121.  Henri and Johnie Beaulieu have resided on their six-acre property

south and west of the Airport for twenty-five to over thirty years. Johnie is the

surviving owner of the property, and Henri will inherit it in the future.

122. Since 2023, and particularly since November of 2023, the Third-Party

County Defendants, acting under color of state law, have allowed the unchecked

expansion of for-profit flight schools, flight training, and other noise-producing

operations from the Airport. This has resulted in excessive noise that substantially

interferes with the Beaulieus' use and enjoyment of their property.

123. Despite numerous complaints from Henri Beaulieu and a Notice of

Claim presented by Attorney Donna Beaulieu on behalf of Henri and Johnie

Beaulieu, these Third-Party County Defendants have willfully and/or wantonly

refused to address and control the persistent noise nuisance over and near the

Beaulieu property. The noise disturbance has persisted to the point of recurrently

disturbing them inside their home and on their property.

124.  Henri and Johnie Beaulieu allege that these Third-Party County Defendants have deprived them of their property rights without due process in violation of the Fourteenth Amendments, by:

A)  Deliberately and/or wantonly refusing to address and control the expansion of flight school and training operations;

B)  Deliberately and/or wantonly refusing to address and control the noise nuisance despite numerous complaints; and

C)  Deliberately and/or wantonly refusing to enforce lease agreements, including permitted unauthorized flight instruction for income or profit knowing these activities violate County lease agreements, or renewing leases with violators.

125.  These Third-Party County Defendants have willfully or wantonly disregarded the Beaulieus' concerns, providing no meaningful opportunity for Henri or Johnie Beaulieu to be heard or seek redress. This lack of opportunity to be heard was further exacerbated by the abuse of legal processes and fear of arrest preventing attendance at county meetings, and contributes to the deprivation of their property rights. These actions and inactions have resulted in a substantial and unreasonable interference with Henri's and Johnie's property rights without due process of law under the Fourteenth Amendment.

126. Further, the silencing of Henri Beaulieu and Johnie Beaulieu by these Third-Party County Defendants through the cease-and-desist letter, the Resolution, and the lawsuit has exacerbated the deprivation of their property rights. This suppression of their First Amendment rights prevents them from communicating about their noise complaints and whistleblowing concerns, contributing to the deprivation of their property rights and taking of their property without due process of law.

127. These Third-Party County Defendants selectively enforce Airport lease provisions and grant assurances, allowing a private, for-profit boat sales business to use public airport land for non-aeronautical, commercial purposes, including inventory storage, without proper oversight and at below-market rent. This business also disrupts the community's safe use of roads by transporting boats across a busy county road.

128. While these Third-Party County Defendants permit this private business to benefit, the County refuses to address and control the harmful plane noise affecting residents. By allowing this business to benefit from public land use and denying similar opportunities to others, the County demonstrates discriminatory and unethical conduct, showing preferential treatment to certain businesses at the expense of the Beaulieus and the public.

129.  These Third-Party County Defendants' actions constitute a violation of the Equal Protection Clause of the Fourteenth Amendment, as they have treated similarly situated entities and individuals differently.

130. These Third-Party County Defendants are sued in their official and individual capacities for knowing and intentional violations of Henri and Johnie's constitutional rights under the Fourteenth Amendment. Their actions have caused past and continuing irreparable harm and damages.

WHEREFORE, Henri Beaulieu and Johnie Beaulieu respectfully request the following relief:

A.  A declaration that the actions and inactions of these Third-Party County Defendants, acting under color of authority, including in wilfully permitting the excessive noise and disturbance from flight school, flight training, and other airplane noise-producing operations from the Airport, and wilfully permitting County airport lease violations, violated the Beaulieus' substantive and procedural due process rights under the Fourteenth Amendment to the U.S. Constitution;

B.   A declaration that these Third-Party County Defendants' actions violated Henri and Johnie Beaulieu's rights under the Equal Protection Clause of the Fourteenth Amendment;

C.  An injunction restoring Henri Beaulieu's and Johnie Beaulieu's rights;

D. An injunction requiring these Third-Party County Defendants to terminate the lease with the boat sales tenant and cease the private commercial use of the public land;

E.  An award of compensatory damages in an amount to be determined at trial for the harm suffered as a result of these Third-Party County Defendants' due process violations;

F. An award of punitive damages in an amount to be determined at trial to deter future misconduct by these Third-Party County Defendants and to punish them for their intentional disregard of Henri and Johnie Beaulieus' rights;

G.  An award of costs and attorney's fees for their attorney under 42 U.S.C. § 1988 as appropriate for this civil rights enforcement action; and

H.  Such other and further relief as the Court deems just and proper.


## COUNT IV: Conspiracy to Interfere with Civil Rights - 42 U.S.C. § 1985

131.  Henri and Johnie Beaulieu allege that Third-Party Defendants, including the County, the County Commission, individual Commissioners, County/Airport Manager Chad Scroggins, Airport Manager/Aviation Supervisor Terry Franklin, County Attorneys J. Bentley Owens, Frank C. Ellis Jr., Over the

Mountain Aviation LLC, Slipstream Aviation LLC, Barry Franks, and Fictitious

Defendants A through J, (the "Third-Party Defendants")  conspired to violate their

constitutional rights.

132.  The conspiracy involved the following overt acts:

A)  Willful failure or refusal to enforce lease provisions prohibiting

unauthorized flight instruction;

B)  Providing dismissive responses to Henri's complaints or intentionally

ignoring them;

C)  Retaliatory actions, including the cease-and-desist letter, the Resolution,

and the lawsuit;

D)  Retaliatory actions, including deliberate plane traffic over and near the

Beaulieus' property (harming them and the community in turn);

E)  Coordinating efforts to increase flight training activities despite the

known harm to the Beaulieus and the community; and

F)   Collaborating between County officials and Airport users to perpetuate

the noise nuisance.

133.  These Third-Party Defendants also conspired to interfere with Henri's

civil rights by coordinating actions to increase noise pollution and retaliate against

his complaints. This included the cease-and-desist letter, the Resolution, and the

lawsuit, all intended to silence his complaints and deprive him of his First Amendment rights.

134. The conspiracy particularly targeted Henri due to his opposition to the Airport's operations and his whistleblowing on Airport-related issues. Johnie Beaulieu's rights were similarly affected as she shares the property with Henri and was deterred from exercising her rights due to these Third-Party Defendants' retaliatory conduct.

135. The Third-Party Defendants, are sued in their official and individual capacities for knowingly and intentionally conspiring to violate Henri and Johnie's constitutional rights. Their actions resulted in harm to Henri and Johnie, causing past and continuing irreparable harm and damages.

136. As a direct and proximate result of the Third-Party Defendants' conspiracy, Henri and Johnie have suffered damages, including the deprivation of their constitutional rights, emotional distress, and the loss of the quiet enjoyment of their property.

WHEREFORE, Henri Beaulieu and Johnie Beaulieu respectfully request the following relief:

A. A declaration that said Third-Party Defendants conspired to interfere with Henri's and Johnie's civil rights in violation of 42 U.S.C. § 1985;

B. An injunction prohibiting said Defendants from engaging in further conspiratorial actions that interfere with Henri's and Johnie's civil rights or contribute to the noise nuisance;

C. Compensatory damages in an amount to be determined at trial for the harm suffered by Henri and Johnie Beaulieu as a result of said Defendants' conspiracy;

D. Punitive damages in an amount to be determined at trial to deter future misconduct by said Defendants and to punish them for their egregious and intentional violation of Henri's and Johnie's civil rights;

E.  An award of costs and attorney's fees for their attorney under 42 U.S.C. §1988 as appropriate for this civil rights enforcement action; and

F.  Such other and further relief as the Court deems just and proper.

## COUNT V: Stigma-Plus Doctrine Violation

137. The Third-Party Defendants, the County, the County Commission, the individual Commissioners, Chad Scroggins, Terry Franklin, J. Bentley Owens, Frank C. Ellis Jr., Charles Edward Poskey and American Drilling of America, Inc., Fictitious Defendants, A through E, and Fictitious Defendants, F through J (whose identities are unknown at this time), (the "Third-Party Defendants), published

and/or caused to be published false statements and accusations against Henri

Beaulieu, including interference with Airport operations, harassment and stalking,

through the cease-and-desist letter and the Resolution posted online (Ex. "B").

138. These baseless allegations, ultimately made public through the County's

website, and the retaliatory actions by airport users, condoned by the County, have

stigmatized Henri Beaulieu and damaged his reputation in the community.

139.  In addition to reputational harm, these Third-Party Defendants' actions

have deprived Henri Beaulieu of his constitutionally protected rights to free speech

and to petition the government for redress of grievances under the First

Amendment.

140.  The deliberate and malicious conduct by these Third-Party Defendants

has also deprived Beaulieu of his right to the quiet enjoyment of his property

through recurrent and substantial plane noise from the Airport, which also

constitutes a taking of his property rights without just compensation and a violation

of his due process under the Fifth and Fourteenth Amendments.

141.  As a direct and proximate result of these Third-Party Defendants'

actions, Henri Beaulieu has suffered substantial harm, including emotional distress,

mental anguish, and damage to his reputation and standing in the community.

142. Henri is entitled to declaratory relief, injunctive relief, and damages,

including compensatory and punitive damages, as well as attorneys' fees and costs, to redress the harm caused by these Defendants' violation of his rights under the stigma-plus doctrine.

WHEREFORE, Henri Beaulieu respectfully requests that this Court enter judgment in his favor and against these Third-Party Defendants, named and fictitious, awarding:

A. A declaration that these Defendants' actions violated Henri's rights under the stigma-plus doctrine;

B. An injunction prohibiting these Defendants from making further defamatory statements and engaging in retaliatory actions against Henri;

C. Compensatory damages in an amount to be determined at trial for the harm Henri has suffered, including emotional distress, mental anguish, and damage to his reputation;

D. Punitive damages in an amount to be determined at trial to deter future misconduct by these Defendants and to punish them for their egregious and intentional violation of Henri's rights;

E. An award of costs and attorney's fees for their attorney under 42 U.S.C. §1988 as permitted and appropriate for this civil rights enforcement action; and

F. Such other and further relief as the Court deems just and proper.

## COUNT VI: The "Federal Law" Preemption Issue

143.  The Third-Party County Defendants, the County, the County Commission, and the individual Commissioners, claim that federal law, presumably FAA regulations or mandates, preempts their authority to manage airport noise at the Shelby County Airport ("Airport"). This assertion is incorrect and represents an improper delegation of authority reserved to state and local governments under the Tenth Amendment to the U.S. Constitution.

144. Henri Beaulieu asserts that the County retains the power to regulate noise and that ceding control to the FAA under grant assurances/mandates was ultra vires.

145. By claiming preemption and wilfully refusing to act on noise complaints, these Defendants have relinquished local powers in violation of the Tenth Amendment's reservation of non-delegated powers to the states and the people.

146. This improper preemption claim has resulted in harm to the Beaulieus, including the loss of the quiet enjoyment of their property due to unchecked plane noise.

147. The Code of Alabama provides in pertinent part under Title IV, Chapter 4-4-1 (Definitions) as follows:

"(5) MUNICIPALITY: Any county, city, town, or incorporated village of the State of Alabama.
(6) MUNICIPAL AIRPORT: An airport under the direct control and management of a municipality; provided, that for the purpose of this and the following definition, the letting by a municipality to others of any privilege or concession upon an airport shall not be construed as depriving the municipality of any control or management over any part of such airport or the operations thereon.
(7) OPERATING AIRPORT: Managing and controlling an airport open for use."

148.  Alabama Code § 4-4-1(6) expressly prohibits counties from delegating or relinquishing control over airport concessions and privileges. By accepting FAA grant assurances/mandates that purportedly limit the County's ability to regulate airport noise, the County has unlawfully ceded its control in violation of state law.

149.  Henri and Johnie Beaulieu have been harmed by the County's refusal to address and control the noise from operations from its Airport based on its erroneous interpretation of federal preemption and its unlawful delegation of control under state law.

WHEREFORE, Henri Beaulieu and Johnie Beaulieu seek the following relief:

A.  Enter a declaratory judgment affirming that the County's acceptance of FAA grant assurances/mandates does not preempt its authority and obligation to regulate noise at the Shelby County Airport;

B.  Enter a declaratory judgment affirming that the County unlawfully ceded control over airport noise regulation by accepting FAA grant assurances/mandates in violation of Alabama Code § 4-4-1(6);

C.  Enter a declaratory judgement that the County acted ultra vires in refusing to follow state law;

D.  Issue an injunction compelling the County to comply with state law;

E.  Award compensatory damages for the harm caused by the County's wilful failure or refusal to address and control airport noise; and

F.  Such other and further relief as the Court deems just and proper.

## B. State Law Claims

## COUNT VII: Private Nuisance under Alabama Law

150.  Henri Beaulieu and Johnie Beaulieu (collectively "the Beaulieus") reside on their six-acre property located at 5839 Smokey Road, Calera, Alabama. The Beaulieus' property is approximately 1.5 to 2 miles south and west of the Shelby County Airport.

151. The County owns and operates the Airport through the Commission and its individual members. Scroggins is the County and Airport Manager, and Terry Franklin is the onsite Airport Manager and Aviation Supervisor (the "County

Defendants").

152.  Section 6-5-120 of the Code of Alabama defines a "nuisance" as:

> "*anything* that works hurt, inconvenience, or damage to
> another. *The fact that the act done may otherwise be
> lawful does not keep it from being a nuisance.* The
> inconvenience complained of must not be fanciful or such
> as would affect only one of a fastidious taste, but it
> should be such as would affect an ordinary reasonable
> man." (emphasis added)

153.  Since 2023, and particularly since November 2023, the Airport users
have repeatedly operated their aircraft, or permitted their aircraft, or aircraft over
which they have had ownership and/or control, to be operated in a manner that has
created excessive noise, interfering with the Beaulieus' use and enjoyment of their
property.

154.  The County Defendants have sanctioned the unchecked expansion of
flight schools and airport operations, resulting in increased noise and disturbances
to the Beaulieus and the surrounding community.

155.  The noise from the Airport causes the Beaulieus, among other things,
annoyance, continual disturbances in their daily lives, emotional distress, a
diminution in the value of their property, and an unreasonable interference with and
deprivation of the use and quiet enjoyment of their property - both inside and
outside their homes.

156.   Despite numerous complaints from the Beaulieus, the County Defendants have wilfully refused to take action to address and control the continuing, persistent noise nuisance over and near the Beaulieu property.

157.   Third-Party Defendants, Barry Franks, Over the Mountain Aviation, LLC, and Slipstream Aviation, LLC, have operated their aircraft, or permitted their aircraft to be operated, in a manner that has created excessive noise, interfering with the Beaulieus' use and quiet enjoyment of their property.

158.   These operations have caused a private nuisance, whether intentionally, deliberately, wantonly, and/or negligently.

159.   Third-Party Defendants, Cary Patrick Cook, WaterWings Seaplanes, LLC, and Charles Welden, have operated their aircraft N730MC, or permitted said aircraft to be operated, in a manner that has created excessive noise, interfering with the Beaulieus' use and quiet enjoyment of their property. These operations have caused a private nuisance, whether intentionally, deliberately, wantonly, and/or negligently. The Beaulieus seek a declaration of the true owner and operator of Plane N730MC to ensure accountability in this suit.

160.   Third-Party Defendant, Birmingham Flight Center, LLC has operated their aircraft, or permitted their aircraft to be operated, in a manner that has created excessive noise, interfering with the Beaulieus' use and quiet enjoyment of their

property. These operations have caused a private nuisance, whether intentionally, deliberately, wantonly, and/or negligently.

161. Third-Party Defendants, Robert S. Grant, Deborah D. Grant, Kevin D. McKee, Rhonda L. Carter, David B. Etheredge, and Michael J. Metcalf have operated their aircraft, or permitted their aircraft to be operated, in a manner that has created excessive noise, interfering with the Beaulieus' use and quiet enjoyment of their property. These operations have caused a private nuisance, whether intentionally, deliberately, wantonly, and/or negligently.

162. Third-Party Defendants, Charles Edward Poskey and American Drilling of Alabama, Inc., have operated their aircraft, or permitted their aircraft to be operated, in a manner that has created excessive noise, interfering with the Beaulieus' use and quiet enjoyment of their property. These operations have caused a private nuisance, whether intentionally, deliberately, wantonly, and/or negligently.

163. The persistent noise nuisances have caused separate, distinct, and actionable harm each time they have occurred and the Beaulieus seek damages for each and every occurrence of harm they have suffered.

WHEREFORE, Henri and Johnie Beaulieu respectfully request the following relief:

A.  A declaration that the actions and/or inactions of the County Defendants and the Third-Party Airport users, named and fictitious, constitute a private nuisance under Alabama law;

B.  An injunction requiring these Third-Party Defendants to cease all activities and operations that cause and contribute to the noise nuisance;

C.  An award of compensatory damages against the County Defendants, named and fictitious, including but not limited to damages for the loss of quiet use and enjoyment of the property, emotional distress, and diminution in property value, in an amount to be determined at trial;

D.  An award of compensatory damages against the Airport user Defendants, named and fictitious, for their direct contribution to the noise nuisance, including but not limited to damages for the loss of quiet use and enjoyment of the property, emotional distress, and diminution in property value, in an amount to be determined at trial;

E.  An award of compensatory damages for the loss of the use and quiet enjoyment of property for each occurrence of nuisance harm suffered by the Beaulieus;

F.  An award of punitive damages, as permitted by Alabama law, to deter future misconduct by the Defendants and to punish them for their deliberate,

intentional, wanton, and reckless disregard for the Beaulieus' rights and for resulting harm; and

    E.   Such other and further relief as the Court deems just and proper.

## **COUNT VIII: Inverse Condemnation**

164. The Beaulieus reside on their six-acre property located approximately 1.5 to 2 miles south and west of the Shelby County Airport.

165.  Since 2023, and particularly November 2023, there has been a significant and persistent increase in noise due to the expansion of flight school operations and flight training activities out of the Airport. This increase in noise has substantially interfered with Beaulieus' use and enjoyment of their property which they own and/or on which they reside.

166. Third-Party Defendants, Shelby County, Shelby County Commission, the individual Commissioners, Chad Scroggins, and Terry Franklin, individually and in their official capacities, and fictitious Defendants A, B, C, D, and E, under color of state law, improperly authorized and allowed these operations to expand unchecked, without adequately addressing and controlling the noise impacts on the surrounding community, despite knowing of the adverse effects on the Beaulieus and other residents.

167.  The continuous and excessive noise from the airport operations, including plane flights over and near the Beaulieu property and recurrent training activities, has led to a regulatory and a de facto taking or damaging of Beaulieus' property, as it has substantially interfered with their use and enjoyment of their homes and property.

168.  These Defendants' actions constitute an unreasonable imposition and a regulatory taking under the Fifth Amendment and the due process clause of the Alabama Constitution, depriving Plaintiff of property use and enjoyment without just compensation.

169.  The noise includes frequent, disruptive overflights and training activities, causes the Beaulieus emotional distress, impairs their use and quiet enjoyment of their property and a diminution in the property's value, reflecting these County Defendants' application of the Beaulieus' property for public Airport use.

170. The Beaulieus have not received just compensation for the substantial interference with their property rights.

WHEREFORE, Henri and Johnie Beaulieu, respectfully request the following relief:

A.  A declaration that the actions and inactions of these County Defendants

regarding Airport operations constitute a taking of the Beaulieus' property for public use without just compensation, in violation of Alabama law;

B.  An award of just compensation for the diminution in value of their property and the loss of the quiet use and enjoyment caused by the inverse condemnation;

C.  An award of costs and attorney's fees as permitted by law; and

D.  Such other and further relief as the Court deems just and proper.

## COUNT IX: Defamation and False Light under Alabama Law

*(Defamation)*

171.  On March 25, 2024, Third-Party Defendants Shelby County, Alabama, the Shelby County Commission, and the individual Commissioners, Chad Scroggins, J. Frank Ellis, Jr., and Fictitious Defendants, A, B, C, D, and E, crafted and passed Resolution No. 2024-03-25-09, which contained false and defamatory statements about Henri Beaulieu. (See Ex."A")

172.  The Resolution falsely stated that Henri's communications to County employees had continued and intensified - constituting harassment - despite his receiving a cease-and-desist letter. These statements were demonstrably false, as Henri had immediately ceased all communications with any County officials,

agents or employees on March 21, 2024, upon receiving the cease-and-desist letter. The Resolution is published on the County Commission's website in the Minutes from the March 25, 2024, commission meeting.

173. The false statements in the Resolution were defamatory under Alabama law, as they tended to injure Henri's reputation, likely subjected him to public ridicule, and imputed misconduct to him that is untrue.

174. These Defendants acted with actual malice, knowingly publishing false statements or with reckless disregard for their truth or falsity, and with the intent to retaliate against Henri Beaulieu for his protected speech and petitioning activities related to the noise nuisance at the Airport and other ethical concerns and issues related to the Airport.

175. As a result of these defamatory statements, Henri has suffered harm to his reputation, emotional distress, and other damages. Henri's counsel served these Defendants' counsel (Ellis) with a demand for retraction pursuant to Alabama Code § 6-5-186, but these Defendants refused to issue a retraction within ten days, entitling Henri to punitive damages under Alabama law.

(False Light)

176. In addition to defamation, the actions of the County Defendants also placed Henri in a false light before the public.

177. By publishing false statements in Resolution No. 2024-03-25-09, the County Defendants intentionally portrayed Henri Beaulieu in a misleading and highly offensive manner, suggesting he engaged in harassment and other unlawful conduct. These false light allegations were made with the knowledge of their falsity or with reckless disregard for the truth, intending to damage Henri's reputation and silence and stop his continued complaints and investigations into wrongdoing at the Airport.

178. As a result of being placed in a false light, Henri has suffered harm to his reputation, emotional distress, and other damages.

179. The County Defendants, acting in concert and with a common purpose, conspired to defame Henri Beaulieu and place him in a false light to intimidate, harass, and stop him from pursuing his complaints and uncovering potential wrongdoing.

180. The coordinated actions of these Defendants, including crafting and passing Resolution No. 2024-03-25-09 with defamatory and false light statements, were deliberate and malicious efforts to damage Henri's reputation and credibility.

181. This conspiracy to defame and place Henri in a false light was a calculated attempt to undermine his claims and stop further scrutiny of the County Defendants' actions.

182. As a result of this conspiracy, Henri has suffered substantial harm, including emotional distress, reputational harm, and the chilling and suppression of his First Amendment rights.

183. On March 3, 2024, Henri's counsel sent a request to the County Attorney (Ellis) with a demand for retraction pursuant to Alabama Code § 6-5-186, but these Defendants have refused to issue a retraction within ten days, entitling Beaulieu to punitive damages under Alabama law.

WHEREFORE, Henri Beaulieu respectfully requests that this Court:

A.  Enter a judgment finding that the statements in Resolution No. 2024-03-25-09 were false and defamatory, and constituted defamation under Alabama law;

B.  Enter a judgment finding that the statements in Resolution No. 2024-03-25-09 were a violation of Henri Beaulieu's First Amendment rights to free speech and to petition the government;

C.  Enter a judgment that the Defendants' false statements in the Resolution constitute defamation per se, as his reputation was harmed in conjunction with the violation of his First Amendment rights and as his reputation was harmed without notice or an opportunity to defend himself, thereby violating his Fourteenth Amendment due process rights;

D.  Ordering the retraction of the contents of the Resolution and its removal from the minutes, and off of the Commission's website;

E.  Order these Defendants to issue a public retraction of the defamatory statements and to remove Resolution No. 2024-03-25-09 from any official records or publications;

F.  Award compensatory damages to Henri for the harm caused by these Defendants' defamatory statements, including damages for injury to his reputation, emotional distress, and any other applicable damages;

G.  Award punitive damages to Henri, as the Defendants acted with actual malice and refused to issue a timely retraction after receiving a demand pursuant to Alabama Code § 6-5-186;

H.  Award Plaintiff reasonable attorney's fees and costs incurred in this action because the County's actions are clearly a question and matter of public concern; and

I.  Grant such other and further relief as the Court deems just and proper.

## COUNT X: Civil Conspiracy under Alabama Law

184. From November 2023 to the present, said Defendants engaged in a civil

conspiracy to cause harm to Henri and Johnie Beaulieu through the creation and maintenance of a noise nuisance at the Airport.

185.  The Third-Party Defendants acted in concert to intentionally and maliciously increase, or to wilfully or wantonly permit the increase, of flight training activities and aircraft operations, causing excessive noise that has interfered with the Beaulieus' use and enjoyment of their property.

186.  The Third-Party County Defendants, the County, the County Commission, the individual Commissioners, Chad Scroggins, Terry Franklin, Fictitious Defendants, A through E (*collectively "the Third-Party County Defendants," individually and in their official capacities*), committed overt acts in the furtherance of this conspiracy, including:

a)  Deliberately and/or wantonly refusing to enforce lease provisions that prohibit tenants from conducting flight instruction activities without written County approval;

b)  Providing dismissive and retaliatory responses to Henri's complaints about the noise nuisance;

c)  Coordinating efforts to increase, or to permit, foster, or support the increase in flight training activities despite knowledge of the resulting harm to Henri, Johnie, and the surrounding community, wilfully allowing and encouraging

sudden increases in air traffic and retaliatory flights following the Beaulieus'
complaints;

d)  Intentionally ignoring noise complaints and allowing unchecked flight
training operations; and

e)  Taking retaliatory action against Henri to silence his complaints about the
noise nuisance and other Airport/County-related conduct and ethical concerns.

187.   The Third-Party Airport Defendants, Barry Franks, Over the Mountain
Aviation, LLC, Slipstream Aviation, LLC, Cary Patrick Cook, WaterWings
Seaplanes, LLC, Charles Welden, Birmingham Flight Center, LLC, Robert S. Grant
and Deborah D. Grant, Kevin D. McKee and Rhonda L. Carter, David B. Etheredge
and Michael J. Metcalf, Charles Edward Poskey and American Drilling of
Alabama, Inc., and Fictitious Defendants, F through J (*collectively the Third-Party
Airport User Defendants*), committed overt acts in the furtherance of this
conspiracy, including:

a)  Increasing flight training activities and/or engaging in aircraft operations
in the planes they own and operate, or permit to be operated, despite knowledge of
the noise nuisance and its impact on the Beaulieus and the community;

b)  Engaging in deliberate flight operations with increased noise to harass the
Beaulieus, particularly in response to their complaints and litigation actions, e.g.,

following the removal of this case from state court;

c)  Coordinating with the County Defendants to maintain and expand their flight training operations without regard for the noise nuisance; and

d)  Likely turning off the receiver at the Airport to make it difficult to track planes' movements, hide their behavior, and perpetuate the nuisance.

188.  As a direct and proximate result of these Defendants' civil conspiracy, Henri and Johnie have suffered damages, including the loss of the quiet use and enjoyment of their property, mental anguish, and emotional distress.

WHEREFORE, Henri and Johnie Beaulieu respectfully request the following relief:

A.  Enter a judgment that the actions of these various Third-Party Defendants (County and Airport User) constituted a civil conspiracy under Alabama law;

B.  Compensatory damages in an amount to be determined at trial for the harm suffered as a result of these Defendants' conspiracy to commit a nuisance;

C.  Punitive damages in an amount to be determined at trial to deter future misconduct and to punish these Defendants for their malicious actions;

D.  Attorney's fees and costs, as permitted by law as this case presents issues of public concern and interest; and

E.  Such other and further relief as the Court deems just and proper.

## COUNT XI: Abuse of Process under Alabama Law

189.  The Beaulieus reside on their six-acre property located at 5839 Smokey Road, Calera, Alabama. The Beaulieus' property is approximately 1.5 to 2 miles south and west of the Shelby County Airport.

190. This claim is asserted against the Third-Party County Defendants, the County Commission, its individual Commissioners, Chad Scroggins, and County Attorneys Frank C. Ellis Jr. and J. Bentley Owens, in their individual and official capacities (collectively "the County Defendants").

191.  The County Defendants improperly used the legal process to file a retaliatory lawsuit against Henri Beaulieu on April 2, 2024, with the ulterior purpose of silencing his complaints about the noise nuisance, public ethics violations, and FAA assurances/mandates violations regarding the Shelby County Airport. These complaints were protected speech and petitioning rights under the First Amendment to the U.S. Constitution.

192. The County filed its lawsuit against Henri twelve (12) days after Henri ceased all communications with the County Defendants on March 21, 2024, falsely claiming in its Complaint that his actions persisted.  Henri was served with the lawsuit within hours of its filing.

193. The timing of the lawsuit, the manner of service, and the fact that it was filed in response to Henri's exercise of his First Amendment rights to speak out about the Airport's noise nuisance and its impact on the quiet enjoyment of his property and his community, demonstrate that the County Defendants acted with malice and used the legal process in a malicious and wrongful manner, not for a legitimate purpose.

194.  The County Defendants used the lawsuit to circumvent the First Amendment and penalize Beaulieu for engaging in free expression, petitioning the government, or speaking out about issues impacting his community. The assertion of specious tort claims against Henri is an improper and unconstitutional application of tortious interference claims.

195. The County Defendants' accusations of harassment and stalking and threats of criminal actions to twist protected speech into something unlawful, is an egregious abuse of the legal system to intimidate Henri and chill his First Amendment rights.

196.  As a result of the County Defendants' abuse of process, Henri has suffered damages, including emotional distress, mental anguish, reputational harm, and the chilling of his First Amendment rights. Henri sues the County Defendants individually and in their official capacities.

WHEREFORE, Henri Beaulieu, respectfully requests the following relief:

A.  Compensatory damages in an amount to be determined at trial for the harm suffered as a result of the County Defendants' abuse of process;

B.  Punitive damages in an amount to be determined at trial to deter future misconduct and to punish the County Defendants for their malicious actions;

C.  Attorney's fees and costs, as permitted by law; and

D.  Such other and further relief as the Court deems just and proper.

## COUNT XII: Breach of Fiduciary Duty under Alabama Law

197. Third-Party Defendants, the County, the  County Commission, the individual Commissioners, Chad Scroggins, and Terry Franklin, as public officials and employees, and Fictitious Defendants A, B, C, D, and E, owed a fiduciary duty to the residents of Shelby County, including the Beaulieus, to act in their best interests and to responsibly manage county assets and operations.

198.  These County Defendants wilfully and/or wantonly, with full knowledge of the harm being caused to the Beaulieus and community, breached their fiduciary duty by:

a)  Wilfully and/or wantonly allowing and/or refusing to curtail the unchecked expansion of flight school operations at the Airport without proper

oversight or consideration of the impact on the surrounding community;

b)  Wilfully and/or wantonly refusing to enforce Airport lease provisions that prohibit tenants from conducting flight instruction activities;

c)  Wilfully and/or wantonly refusing to address and control the noise harm affecting the Beaulieus and other residents; and

d)  Wilfully and/or wantonly disregarding the Beaulieus' complaints and wilfully and/or wantonly failing to take appropriate action to address and control the noise nuisance, despite having knowledge of the ongoing harm;

e)  Wilfully and/or wantonly permitting the misuse of Airport property for non-aeronautical purposes, such as the operation of a for-profit boat sales business, and selectively enforcing regulations; and

f)  Allowing the private business to benefit from the use of public land, while denying similar opportunities to others.

199.  These Defendants' actions and inactions demonstrate an intentional and/or wanton breach of their fiduciary duty, as Defendants prioritized the interests of the flight schools, training activities, profit of the Airport, and certain private businesses over the well-being of the residents they were entrusted to serve.

200.  These actions have also resulted in the improper use of public resources and have caused harm to the Plaintiffs and the community, including

increased traffic hazards and reduced property values. These Defendants' refusal to address and control these issues, despite being repeatedly informed, demonstrates wilful misconduct and unethical conduct.

201.  These Defendants further abused their power as public officials and employees by intentionally refusing to address the Beaulieus' noise nuisance complaints, despite clear evidence of harm and foreseeable consequences. This abuse of power constitutes willful misconduct and a dereliction of the duties imposed by Alabama Code § 4-4-1(6), which requires the County to maintain control over county assets and operations. As a result, the Beaulieus have suffered significant damages.

202.  As a direct and proximate result of these Defendants' breach of fiduciary duty, Plaintiffs Henri and Johnie Beaulieu have suffered damages, including the loss of the quiet use and enjoyment of their property, diminution in property value, mental anguish, and emotional distress.

WHEREFORE, Henri and Johnie Beaulieu respectfully request that this Court:

A.  Enter a judgment finding that these Defendants breached their fiduciary duty to Henri and Johnie Beaulieu and the community under Alabama law;

B.  Award compensatory damages to Henri and Johnie Beaulieu for the harm

caused by these Defendants' breach of fiduciary duty, including damages for the loss of the quiet use and enjoyment of their property, diminution in property value, mental anguish, and emotional distress;

C.  Award punitive damages to Henri and Johnie Beaulieu to punish these Defendants for their intentional and wanton breach of fiduciary duty and to deter similar conduct in the future; and

D.  Grant such other and further relief as the Court deems just and proper.


## COUNT XIII: Wantonness under Alabama Law

203. Third-Party Defendants, Barry Franks, Over the Mountain Aviation LLC, Slipstream Aviation LLC, Cary Patrick Cook, WaterWings Seaplanes, LLC, Charles Welden, Robert S. Grant and Deborah D. Grant, Kevin D. McKee and Rhonda L. Carter, David B. Etheredge and Michael J. Metcalf, Charles Edward Poskey and American Drilling of Alabama, Inc., and fictitious Defendants F, G, H, I, and J, consciously and intentionally and/or wantonly operated their planes and/or permitted their planes to be operated in a manner that created excessive noise, with notice of the harm, and with reckless disregard for the likely harmful consequences to the Beaulieus and the surrounding community.

204. These Defendants engaged in repetitive flight operations, including

training activities, near and/or over the Beaulieus' property causing them repetitive and substantial harm from noise. These Defendants engaged in retaliatory flight operations causing harm to the Beaulieus from noise.

205.  These Defendants failed to conduct their operations in a manner that avoids harm to the Beaulieus, particularly by ignoring community noise impact, with notice and knowledge and with a reckless disregard that their activities were causing harm from noise.

206.   This failure represents a wanton breach of their duty to operate considerately within a community context and to not create or maintain a noise nuisance in violation of Alabama nuisance law.

207. As a direct and proximate result of these Defendants' wanton conduct, the Beaulieus have suffered damages, including the loss of the quiet use and enjoyment of their property, diminution in property value, mental anguish, and emotional distress.

WHEREFORE, Henri and Johnie Beaulieu respectfully request that this Court:

A.  Enter a judgment finding that these Defendants' conduct constitutes wantonness under Alabama law;

B.  Award compensatory damages to Henri and Johnie for the harm caused

by these Defendants' wanton conduct, including damages for the loss of the quiet use and enjoyment of their property, diminution in property value, mental anguish, and emotional distress;

C.  Award punitive damages to the Beaulieus to punish these Defendants for their wanton conduct and to deter similar conduct in the future; and

D.  Grant such other and further relief as the Court deems just and proper.

Counterclaim for Attorney's Fees

**Attorney's Fees under the Alabama Litigation Accountability Act**

208.  Henri Beaulieu and Johnie Beaulieu, assert that the County Defendants, the County, the County Commission, the individual Commissioners, Chad Scroggins, and County Attorney Ellis, have brought claims in their Complaint against Henri in this matter that are without substantial justification, as defined by the Alabama Litigation Accountability Act, Ala. Code § 12-19-271(1).

209.  The claims asserted by the County Defendants are groundless in fact and law, and are brought in bad faith for the purpose of harassment, delay, or increasing the cost of litigation.

210.  Pursuant to the Alabama Litigation Accountability Act, Ala. Code §12-19-272, Henri and Johnie Beaulieu are entitled to an award of reasonable attorneys' fees and costs incurred by their attorney in defending against the County

Defendants' claims.

WHEREFORE, Henri Beaulieu and Johnie Beaulieu respectfully request that this Court:

A)  An award of attorney's fees and costs for their attorney pursuant to the Alabama Litigation Accountability Act, Ala. Code § 12-19-270 et seq.; and

B)  Any other relief that the Court deems just and proper.

Respectfully Submitted,

  Signature page to be filed separately
**HENRI BEAULIEU**

  Signature page to be filed separately
**JOHNIE C. BEAULIEU**

STATE OF ALABAMA)
COUNTY OF SHELBY)

## **VERIFICATION**

Before me, the undersigned, a Notary Public in and for said County and State, personally appeared **Henri Beaulieu and Johnie C. Beaulieu**, who are known to me, and, after being first duly sworn by me, depose and say that the foregoing is true and correct.

Sworn to and subscribed before me this the 20th day of May, 2024.

  s/Signature page to be filed separately
Notary Public
My Commission Expires:

## **Jury Demand**

Counterclaim-Plaintiff/Third-Party Plaintiffs demand a trial by struck jury as

Page 85 of  86

to all claims triable by a struck jury.

                     s/Donna J. Beaulieu          
                     Counsel for Counterclaim Plaintiff/Third-Party Defendants

                     Respectfully Submitted,

                     By: s/Donna J. Beaulieu        
                         Donna J. Beaulieu (ASB-1607-A40D)
                         Attorney for Defendant/Counter-Plaintiff/Third-Party Plaintiffs
                         Post Office Box 88
                         Pelham, AL 35124
                         Tel.: (205) 773-9588
                         Email: donnabeaulieu@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May, 2024, I have electronically filed the foregoing via E-File through the CM/ECF Filing System, and a copy of the same will be served via electronic mail and/or via United States Mail, properly addressed and first-class postage prepaid upon the following counsel for the Plaintiff/Counter-Defendant:

Frank C. Ellis, Jr., Esq.
J. Bentley Owens, Esq.
Ellis, Head, Owens, Justice, Arnold & Graham
P.O. Box 587
Columbiana, AL 35051
Emails: fellis@wefhlaw.com
         bowens@wefhlaw.com

                     s/Donna J. Beaulieu         
                     Counsel for Defendant/Counter-Plaintiff/Third-Party Plaintiffs

                     Third-Party Defendants to be served pursuant to the applicable Federal Rules of Civil Procedure